Kenneth F. KENNEALLY, Individually and as Next Friend of Timothy F. Kenneally, and Ivy Kenneally, Appellants,

v.

Bruce A. THURN, Et Al., Appellees.

No. 16523.

Court of Appeals of Texas,
San Antonio.

April 29, 1983.

Rehearing Denied June 1, 1983.

Terence A. Willis, San Antonio, for appellants.

Wm. T. Kaufman, Hobart Huson, Jr., Kenneth L. Clark, Nelson A. Clare, Asst. City Atty., San Antonio, for appellees.

Before CADENA, C.J., and ESQUIVEL and DIAL, JJ.

## OPINION

CADENA, Chief Justice.

Plaintiffs, Kenneth F. Kenneally, individually and as next friend of Timothy Kenneally, a minor, and Ivy Kenneally, appeal from a judgment awarding the $8,415.00 as compensation for injuries received by Timothy Kenneally in a vehicular collision.

The suit was originally filed against defendants, Bruce Thurn, his father, Charles Thurn, the City of San Antonio and Ann Ulrich. Plaintiffs alleged that Bruce Thurn, operator of the vehicle which was involved in the collision with a motorcycle being operated by Timothy Kenneally, negligently operated his vehicle; that Charles Thurn negligently entrusted the vehicle in question to Bruce Thurn that the City of San Antonio was negligent in permitting a stop sign to be obscured from view by crepe myrtle bushes; and that Ann Ulrich, occupant of the house on the corner of the street at which the accident occurred, negligently failed to trim the bushes which were located on her property but within the City's easement.

After the jury had been empaneled and sworn, plaintiffs announced that they had settled their claim against Ulrich and took a nonsuit as to her. At the close of testimony the trial court granted a motion for instructed verdict filed by the City.

In this opinion, unless otherwise indicated, "Kenneally" will be used to refer to Timothy Kenneally, the minor who was injured in the collision, and "Thurn" will be used to refer to Bruce Thurn, the defendant who was operating the automobile involved in the collision.

The accident occurred at the intersection of Montrose Avenue and Rossi Street in San Antonio on the afternoon of January 25, 1977. Montrose Avenue runs east and west, while Rossi Street runs north and south.

Thurn was approaching the intersection, travelling east on Montrose, while Kenneally was approaching the intersection on his motorcycle, travelling north on Rossi. A stop sign had been erected by City on the southwest corner of the intersection, controlling traffic proceeding east on Montrose. The testimony showed that the view of the stop sign was obscured by bushes growing on the property owned by Ulrich, but located on the unimproved portion of the City's street easement. Thurn testified that he entered the intersection without stopping because the stop sign was not visible. Kenneally testified that the bushes prevented him from seeing eastbound traffic on Montrose, and that he did not see the Thurn vehicle until his motorcycle struck it near the right rear door.

Twenty special issues were submitted to the jury. Issues two, five and twenty were conditionally submitted and were not answered. The answers to the remaining special issues were as follows:

1. Thurn's failure to stop at the intersection was not negligence. (This special issue was accompanied by an instruction that Thurn's failure to stop constituted negligence unless his failure to stop was excused because his view of the stop sign was obstructed.)

3 and 4. As Thurn approached the intersection, Kenneally's motorcycle was approaching the intersection "in such proximity as to be a hazard," but Thurn's failure to yield to the Kenneally vehicle was not negligence.

6. Thurn was negligent in failing to keep a proper lookout and in failing to apply his brakes, and each such negligent act was a proximate cause of the accident.

7 and 8. Bruce Thurn was a reckless and incompetent driver and his father, Charles Thurn knew or should have known this fact.

9, 10 and 11. The Thurn vehicle entered the intersection substantially in advance of the Kenneally motorcycle, and

Kenneally's failure to yield to the Thurn vehicle was negligence which was a proximate cause of the accident. (In connection with these issues, the jury was instructed that the driver of a vehicle which has entered an intersection has the right of way "with respect to another vehicle approaching the intersection from a different highway.")

12. Kenneally was negligent in operating his vehicle at an unreasonable speed, in failing to keep a proper lookout and in failing to apply his brakes properly. Each such negligent act was a proximate cause of the accident.

13, 14 and 15. Ann Ulrich was negligent in failing to trim the crepe myrtle bushes and such negligence was a proximate cause of the accident.

16. Ann Ulrich was guilty of 50% of the negligence which caused the accident; 30% of such causal negligence was attributable to Thurn; and 20% of such causal negligence was attributable to Kenneally.

17. Kenneally's damages totalled $28,-150.00.

18. The "reasonable expense ... for necessary medical and hospital care furnished" Kenneally by the United States government in the past for treatment of the injuries resulting from the accident was found to be "$00.00".

19. Charles A. Thurn was not grossly negligent in allowing Bruce Thurn to drive the vehicle involved in the accident.

Plaintiffs' first two points, which complain of the action of the trial court in sustaining the City's motion for instructed verdict must be sustained.

City contends that the maintenance of traffic control signs is a governmental function, and that under the provisions of the Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 14(12) (Vernon 1970), it is immune from liability because there is no evidence showing a "malfunction" or "condition" of the sign, and that a municipality is under no duty to remove obstructions to the visibility of a traffic sign when such obstructions are located on the unimproved portion of the right of way.

■ City's contentions must be rejected in view of the holding in *Lorig v. City of Mission*, 629 S.W.2d 699 (Tex.1982), that the obstruction of a traffic sign by trees or bushes is a "condition" of such sign, exposing the municipality to liability under section 14(12) of the Tort Claims Act for negligent failure to keep the view of the sign unobstructed. The fact that *Lorig* was decided after the trial of this case is irrelevant. The decision did not change established law. In the course of the *Lorig* opinion, the Supreme Court pointed out that the decision of the intermediate appellate court absolving the municipality from liability was in conflict with the prior holding by the Supreme Court in *City of Austin v. Daniels*, 160 Tex. 628, 335 S.W.2d 753 (1960).

■ There is sufficient evidence to raise a question of fact as to whether the condition had existed for such a length of time that City, in the exercise of reasonable diligence, should have discovered it. The photographs introduced in evidence showed that the bushes were scraggly, indicating that they had not been trimmed in some time. One of the residents in the area testified that the bushes had been there as long as she could remember. The evidence also showed that various police officers of the City, while on routine patrol, drove through the intersection, driving in an easterly direction, several times a month.

The granting of City's motion for instructed verdict was error. *Texas Employers Insurance Association v. Page*, 553 S.W.2d 98, 100 (Tex.1977).

The jury found that as Thurn approached the intersection the Kenneally vehicle was in such proximity as to constitute a hazard (issue 3). The jury also found that Thurn's vehicle entered the intersection substantially ahead of Kenneally (issue 9). We reject plaintiffs' contention that the two findings are in irreconcilable conflict.

■ In answer to issue six, the jury found that Thurn was proximately negligent with respect to lookout and application of brakes, and that such negligence was a proximate cause of the accident. If, while

taking into consideration the rest of the verdict, we disregard the answer to issue three and accept as correct the answer to issue nine, the judgment would not be changed. The same is true if we disregard the answer to issue nine and accept the answer to issue three as correct. Therefore, the conflict, if any, is not a fatal conflict. *Little Rock Furniture Manufacturing Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 991 (1948).

Although there is no fatal conflict, it should be pointed out that the trial court, by submitting issues three and four, and then submitting issues nine, ten and eleven, created a situation which permitted the jury to find that both Thurn and Kenneally had the right of way. The instruction, accompanying issues nine, ten and eleven, that Thurn had the right of way if he entered the intersection substantially ahead of Kenneally, is not correct. Under the facts of this case, Kenneally had the right of way, even if we treat the intersection as an uncontrolled intersection (assuming the stop sign was not visible to Thurn) because he was approaching the intersection to Thurn's right. Tex.Rev.Civ.Stat.Ann. art. 6701d, § 71(d) (Vernon 1977). It is, of course, true that if Thurn entered the intersection substantially ahead of Kenneally, the fact that he had the right of way would not excuse his rushing out into the path of danger. *Lawson v. Estate of McDonald,* 524 S.W.2d 351, 354–55 (Tex.Civ.App.— Waco 1975, writ ref'd n.r.e.). If Thurn did enter the intersection first, that fact could be the basis for finding that Kenneally was negligent because of his failure to keep a proper lookout, apply his brakes, take evasive action, etc. But such finding of negligence could not be based on Kenneally's failure to yield the right of way. Issues nine, ten and eleven should not have been submitted.

Plaintiffs correctly insist that evidence that Ulrich, after the accident, trimmed the crepe myrtle should not have been admitted. While it is true that evidence of post-accident remedial measures may be admissible for the purpose of show-

ing that the dangerous condition could have been eliminated, such rule should only be applied in cases where the possibility of eliminating the danger is contested. In this case the photographs of the condition of the bushes at the time of the accident established that the dangerous situation could have been corrected merely by trimming the bushes. In fact, plaintiffs' cause of action against Ulrich and the City was predicated squarely on the theory that trimming the bushes would have cured the dangerous situation. Nor was such evidence admissible for the purpose of showing that Ulrich had the right to control the growth of the bushes on her property. Her right to control the growth of the bushes on her property was not in dispute.

Plaintiffs' contention that the trial court erred in instructing the jury, in connection with issue one, that Thurn's failure to stop at the intersection would constitute negligence unless such failure was excusable because the stop sign was not visible, has no merit. In the absence of an excuse, the failure to stop at the stop sign would be negligence *per se.* But the fact that the sign was obstructed by the bushes was clearly an acceptable excuse since it established that Thurn neither knew nor should have known of the occasion for compliance with the statute requiring him to stop at a stop sign. *Impson v. Structural Metals,* 487 S.W.2d 694, 696 (Tex.1972). Plaintiffs concede that the obstruction of the stop sign would qualify as an excuse, but insist that the excuse was available to Thurn only if his ignorance of the occasion for compliance was not due to his own negligent conduct, and that the jury should have been so instructed. We do not agree.

Thurn's unawareness of his obligation to stop in obedience of the stop sign was not, under any stretch of the imagination, due to any negligent conduct on his part. The invisibility of the stop sign was due to circumstances completely beyond his control. The possibility that Thurn's lack of awareness of the occasion for compliance with the applicable statute relating to stop signs was simply not raised by the evidence. Plain-

tiffs' pleadings unequivocally allege that the lack of visibility of the sign was due to the negligence of the City and Ulrich.

In their pleadings plaintiffs alleged that, because of the injuries resulting from the collision, Kenneally received medical and hospital care and treatment furnished by the United States of America. They also alleged that, under 42 U.S.C. § 2651(a) (1970), where the United States furnishes hospital or medical care to a person who has been injured by the tortious act of another and is entitled to receive such services from the government, the government has the right to recover from the tort-feasor the reasonable value of the care and treatment furnished and shall be subrogated to any claim the recipient of such services has against the tort-feasor to the extent of the reasonable value of the services rendered by the government. The injured person may be required to assign his claim or cause of action to the United States to the extent of the government's claim.

Plaintiffs alleged that, with the express consent of the United States, they sought recovery for the benefit of the government of the reasonable value of the care and treatment furnished by the United States to Kenneally.

Section 2651(b) provides that the United States may enforce its right by joining or intervening in any suit instituted by the recipient of the medical services against the tort-feasor, or if no such action is commenced by the injured person within six months after the first day in which treatment is furnished, the United States may sue the tort-feasor in any United States or State court in its own name or in the name of the recipient of the services.

The Federal statute provides that the United States may enforce its right (1) by subrogation or requiring the injured party to assign his claim to the United States; (2) by intervening in a suit filed by such third party against the tort-feasor; or (3) by filing a suit against the tort-feasor independently of any suit filed by the injured party.

In *Conley v. Mataala,* 303 F.Supp. 484, 485 (D.N.H.1969), the court correctly pointed out that the procedures specified in the statute are permissive, rather than mandatory, and went on to hold that the injured party, in the suit filed by him against the tort-feasor, may, at the request of the United States and without joinder of the United States, enforce the government's claim for the sole benefit of the United States.

It is true that the procedures outlined in the statute are not mandatory. But the fact that officials of the United States are not unequivocally required to attempt to enforce the claim of the United States cannot be interpreted to mean that the injured party may, in a suit to which the United States is not a party, enforce the government's claim.

In *Conley,* the United States had made formal demand for payment by letter to the tort-feasor and had, by letter, requested plaintiff's attorney to prosecute the government's claim in the suit filed by plaintiff against the tort-feasor. The record before us contains no evidence that the United States ever demanded payment from Thurn, nor is there anything in the record indicating that the United States authorized plaintiff or his attorney to seek recovery on behalf of the government. *Conley* is inapplicable.

Plaintiffs' complaint concerning the finding of the jury in response to issue eighteen, which inquired concerning the "reasonable expense" for hospital and medical care furnished by the United States, (to which the jury answered "$00.00") is irrelevant.

The judgment must be reversed because of the error of the trial court in granting City's motion for instructed verdict. Thurn insists that only the portion of the case concerning City's liability should be reversed and that the portion of the judgment adjudicating plaintiffs' rights against the Thurns should be severed and affirmed. We cannot agree.

Under Rule 434, Tex.R.Civ.P. (Vernon 1980), this Court, where it appears

that the error affects a part only of the matter in controversy, and that such part is clearly separable without unfairness to the parties, may reverse the judgment of the trial court and order a new trial only as to the part affected by the error which requires the reversal. We cannot say that reversing the judgment of the trial court only insofar as plaintiffs' claim against the City of San Antonio is concerned would not produce unfairness to plaintiffs. Because of the doctrine of comparative negligence, plaintiffs are entitled to a comparison of the extent of the causal negligence of all parties to the suit. We cannot say that the error in excluding the City of San Antonio from the process of attributing causal negligence to each party did not affect the jury verdict in this case. It should also be noted that an affirmance of the judgment insofar as it affects Thurn could seriously hamper the effective presentation of plaintiffs' rights. We would then have a judgment allocating 100% of the causal negligence among Kenneally, Thurn and Ulrich. Nothing is left for the jury, at the second trial, to allocate to the City of San Antonio under the doctrine of estoppel by judgment. Fairness requires that the entire judgment be reversed and that the cause be remanded to the trial court for a new trial so that the rights of all parties may be fairly adjudicated.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

## ON APPELLEE CITY OF SAN ANTONIO'S MOTION FOR REHEARING

A judgment was entered in this proceeding on April 29, 1983, reversing the judgment of the trial court and assessing costs against appellees, Bruce A. Thurn and Charles Thurn. Appellees' have filed a motion for a rehearing requesting in part that costs be readjudged.

Our opinion reverses the judgment of the trial court because of its error in granting an instructed verdict in favor of the City of San Antonio. Since reversible error is not attributable to appellees, Bruce A. Thurn

and Charles Thurn, good cause exists to tax costs to appellants and the City of San Antonio.

Accordingly, the costs of appeal are retaxed three-fourths to appellee, The City of San Antonio and one-fourth to appellant, Kenneth F. Kenneally. In all other respects, appellees' motions for rehearing are denied.